# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

OLGA SALAZAR, Personal Representative
of the Estate of JESUS MARQUEZ,

       Plaintiff,

vs.                                                                    No. CIV 15-0417 JB/LF

SAN JUAN COUNTY DETENTION CENTER ("SJCDC"),
SAN JUAN COUNTY, SAN JUAN REGIONAL MEDICAL
CENTER ("SJRMC"), THOMAS C. HAVEL,
INDIVIDUALLY AND AS ADMINISTRATOR OF SJCDC,
DR. ERIC KETCHAM, INDIVIDUALLY, CINDY KETCHAM,
INDIVIDUALLY, KATIE (Unknown Surname), RN,

       Defendants.

       consolidated with

JESSE BURKEE, EARL CALLAHAN, LARIET CHARLES,
GORDON DOUGLAS DERRICK, AARON EATON,
CALVIN FINCH, PAUL GOULD, JOSEPH GUTIERREZ,
MARK HINOJOS, THOMAS KNIGHT, AURELIO MARQUEZ,
ANGELO MARTINEZ, MARK MARTINEZ, RUDY MARTINEZ,
VICTORIA MARTINEZ, PAUL MATAMOROS,
RICHARD MCDONALD, DEBBIE NEZ, DAVID PAGE,
STEVE PARRISH, CLIFFORD ROGERS, ADAM SCHUESSLER,
JASON TRUJILLO, FRANKLIN TSO, STEVE VALERIO,
JIMMY WEAHKEE and HARRY WILLIAMS,

       Plaintiffs,

vs.                                                                    No. CIV 15-0439 JB/LF

SAN JUAN COUNTY DETENTION CENTER ("SJCDC")
SAN JUAN COUNTY, CORRECTIONAL HEALTHCARE
COMPANIES, INC. ("CHC"), SAN JUAN REGIONAL
MEDICAL CENTER ("SJRMC"), PRESBYTERIAN MEDICAL
SERVICES ("PRESBYTERIAN"), THOMAS C. HAVEL,
INDIVIDUALLY AND AS ADMINISTRATOR, SAN JUAN
COUNTY DETENTION CENTER,

       Defendants.

consolidated with

CHARLES CARTER, Personal Representative
of the Estate of WILLIAM "BILLY" CARTER,

       Plaintiff,

vs.                                 No. CIV 15-0497 JB/LF

SAN JUAN COUNTY DETENTION CENTER ("SJCDC"),
SAN JUAN COUNTY, SAN JUAN REGIONAL MEDICAL
CENTER ("SJRMC"), THOMAS C. HAVEL, INDIVIDUALLY
AND AS ADMINISTRATOR OF SJCDC, DR. ERIC
KETCHAM, INDIVIDUALLY, CINDY KETCHAM,
INDIVIDUALLY,

       Defendants.

       consolidated with

COREY JONES, Personal Representative
of the Estate of Sharon Jones

       Plaintiff,

vs.                                 No. CIV 15-0526 JB/LF

SAN JUAN COUNTY DETENTION CENTER ("SJCDC"),
SAN JUAN COUNTY, SAN JUAN REGIONAL MEDICAL
CENTER ("SJRMC"), THOMAS C. HAVEL, INDIVIDUALLY
AND AS ADMINISTRATOR OF SJCDC, DR. ERIC
KETCHAM, INDIVIDUALLY, CINDY KETCHAM,
INDIVIDUALLY,

       Defendants.

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before the Court on Defendants San Juan County Detention

Center, San Juan County, and Thomas C. Havel's (collectively, "the County Defendants")

Motion to Dismiss Americans with Disabilities Act Claim and State Law Claims, filed December

2, 2015 (Doc. 116)("Motion").  The Court held a hearing on February 18, 2016.  The primary

issues are: (i) whether the Plaintiffs'[1] claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12131-134 ("ADA"), fails to allege with sufficient particularity conduct that violates the ADA; and (ii) whether state sovereign immunity shields Defendants San Juan County Detention Center, San Juan County, and Thomas C. Havel, the County Defendants, from the Plaintiffs' New Mexico state law claims of negligence and intentional infliction of emotional distress.

## FACTUAL BACKGROUND

This case arises from the Plaintiffs' incarcerations at the San Juan County Detention Center in San Juan County, New Mexico. See Burkee v. San Juan, No. CV 15-00439, Second Amended Complaint ¶1, at 2, filed on July 8, 2015, (Doc 27). San Juan County is the public entity responsible for the San Juan County Detention Center. See Burkee Complaint ¶ 11, at 3. Defendant Thomas Havel is the San Juan County Detention Center Administrator. See Burkee Complaint ¶ 8, at 3. Plaintiffs are individual residents of San Juan County who were and are incarcerated in the San Juan County Detention Center between 2013 and the present. See Burkee Complaint ¶ 1, at 2.

The Plaintiffs assert that the twenty-six named Plaintiffs suffered various injuries while incarcerated at the San Juan County Detention Center as a result of the County Defendants' violations of federal and New Mexico law. See Burkee Complaint ¶¶ 18-153, at 4-20. There are five types of injuries common among the Plaintiffs, including: (i) denial of necessary prescription medication; (ii) denial of access to medical professionals or outside medical

---

[1]"The Plaintiffs" refers to the plaintiffs listed in Jesse Burkee, et al. vs. San Juan County Detention Center, et al., No. CIV 15-0439 JB/LF, at 1 (D.N.M., filed on May 26, 2015)("Burkee Complaint"). The list of Plaintiffs in the Burkee Complaint: Jesse Burkee, Earl Callahan, Lariet Charles, Gordon Douglas Derrick, Aaron Eaton, Calvin Finch, Paul Gould, Joseph Gutierrez, Mark Hinojos, Thomas Knight, Aurelio Marquez, Angelo Martinez, Mark Martinez, Rudy Martinez, Victoria Martinez, Paul Matamoros, Richard McDonald, Debbie Nez, David Page, Steve Parrish, Clifford Rogers, Adam Schessler, Jason Trujillo, Franklin Tso, Steve Valerio, Jimmy Weahkee, and Harry Williams.

facilities; (iii) refusal to transport the Plaintiffs with life threatening conditions to outside emergency room or hospital facilities; (iv) injuries San Juan County Detention Center staff directly inflicted upon the Plaintiffs; and (v) forced consumption of non-prescribed prescription medication.  The Court summarizes the Plaintiffs by their asserted injuries in the chart below:

**Categorization of the Plaintiffs Based on Asserted Injury**[2]

| | Refused Prescription Medication | Refused Medical Treatment | Refused Hospital Transport | Direct Injuries | Forced Ingestion of Prescriptions |
|---|---|---|---|---|---|
| 1 | Jesse Burkee (¶¶ 18-27) | Jesse Burkee (¶¶ 18-27) | Earl Calahann (¶¶ 28-46) | Mark Hinojos (¶¶ 71-73) | Steve Valerio (¶¶ 141-147) |
| 2 | Earl Calahann (¶¶ 28-46) | Earl Calahann (¶¶ 28-46) | Thomas Knight (¶¶ 74-79) | Richard McDonald (¶¶ 107-114) | |
| 3 | Gordon Douglas Derrick (¶¶ 51-53) | Lariet Charles (¶¶ 47-50) | Aurelio Marquez (¶¶ 80-84) | Steve Valerio (¶¶ 141-147) | |
| 4 | Paul Gould (¶¶ 65-66) | Gordon Douglas Derrick (¶¶ 51-53) | | Jimmy Weahkee (¶¶ 148-150) | |
| 5 | Thomas Knight (¶¶ 74-79) | Aaron Eaton (¶¶ 54-60) | | | |
| 6 | Aurelio Marquez (¶¶ 80-84) | Calvin Finch (¶¶ 61-64) | | | |
| 7 | Angelo Martinez (¶¶ 85-88) | Joseph Gutierrez (¶¶ 67-70) | | | |
| 8 | Mark Martinez (¶¶ 89-90) | Mark Hinojos (¶¶ 71-73) | | | |
| 9 | Victoria Martinez (¶¶ 94-96) | Thomas Knight (¶¶ 74-79) | | | |
| 10 | Paul Matamoros | Aurelio Marquez | | | |

---

[2] The Court based its categorization on the injuries that the Plaintiffs assert they incurred as a result of the County Defendants' actions.  The numbers in parentheses adjacent to the Plaintiffs' names refer to the paragraphs where the assertion is located in the Burkee Complaint. See Burkee Complaint ¶¶ 18-153, at 4-20.

| | | | | |
|---|---|---|---|---|
| | (¶¶ 97-106) | (¶¶ 80-84) | | |
| 11 | Debbie Nez (¶¶ 115-119) | Rudy Martinez (¶¶ 91-93) | | |
| 12 | Steve Parrish (¶¶ 124-125) | Debbie Nez (¶¶ 115-119) | | |
| 13 | Clifford Rogers (¶¶ 126-131) | David Page (¶¶ 120-123) | | |
| 14 | Adam Schuessler (¶¶ 132-135) | Steve Parrish (¶¶ 124-125) | | |
| 15 | Jason Trujillo (¶¶ 136-137) | Clifford Rogers (¶¶ 126-131) | | |
| 16 | Franklin Tso (¶¶ 138-140) | Adam Schuessler (¶¶ 132-135) | | |
| 17 | Jimmy Weahkee (¶¶ 148-150) | Jason Trujillo (¶¶ 136-137) | | |
| 18 | Harry Williams (¶¶ 151-153) | Steve Valerio (¶¶ 141-147) | | |
| 19 | | Harry Williams (¶¶ 151-153) | | |

The Court identifies eighteen instances in the Burkee Complaint where the Plaintiffs assert that County Defendants refused the Plaintiffs' requests for necessary prescription medication. The Plaintiffs assert that the County Defendants not only denied the Plaintiffs' requests for prescription medication, see Complaint ¶ 20, at 4, but also the requests that medical professionals treating the Plaintiffs gave the Plaintiffs, see Burkee Complaint ¶ 66, at 10. The Court identifies nineteen instances in the Burkee Complaint where the Plaintiffs assert that the County Defendants denied the Plaintiffs access to necessary medical treatment, including doctor and medical staff consultations. See Burkee Complaint ¶ 25, at 5.

The Court identifies three instances in the Burkee Complaint where the Plaintiffs assert that the County Defendants refused to transport the Plaintiffs with life threatening medical

conditions to a hospital or emergency room.  <u>See</u> Burkee Complaint ¶ 80, at 12.  The Court identifies four instances where the Plaintiffs assert that the County Defendants' actions directly injured the Plaintiffs.  The Plaintiffs assert various injuries resulting from the County Defendants including the intentional poisoning with prescription medications, <u>see</u> Burkee Complaint ¶¶ 108-113, at 15, and the intentional exposure to tuberculosis, <u>see</u> Burkee Complaint ¶ 147, at 19-20.  Finally, the court identifies one instance in the Burkee Complaint where the Plaintiffs assert that the County Defendants forced the Plaintiffs to ingest a non-prescribed prescription medication.  <u>See</u> Burkee Complaint ¶¶ 141-15, at 19.

The Plaintiffs assert that the County Defendants' actions resulted in permanent injuries and disfigurement, <u>see</u> Burkee Complaint ¶ 48, at 8; <u>see</u> <u>also</u> Burkee Complaint ¶ 84, at 12; severe emotional distress, <u>see</u> Burkee Complaint ¶ 22, at 5; and severe physical pain, <u>see</u> Burkee Complaint ¶¶ 54-60, at 9.  The Plaintiffs contend that the County Defendants' actions violated the ADA by failing to make accommodations to plaintiffs with known, obvious, and disclosed disabilities.  <u>See</u> Burkee Complaint ¶ 173, at 24.  The Plaintiffs contend that the County Defendants violated New Mexico state negligence law by acting, or failing to act, in bad faith and with deliberate indifference to the patients and inmates' medical needs and by failing to provide reasonable medical care to citizens while incarcerated.  <u>See</u> Burkee Complaint ¶¶ 166-8, at 23.  The Plaintiffs contend that the County Defendants violated New Mexico state law regarding the intentional infliction of emotional distress through the County Defendants outrageous behavior which was the direct and proximate cause of the Plaintiffs' injuries, including severe psychological and physical injury and harm to Plaintiffs.  <u>See</u> Burkee Complaint ¶ 175-7, at 24.

**PROCEDURAL BACKGROUND**

The Court will briefly outline this case's progress and summarize the parties' arguments for and against the Motion.  The Court will first describe what has happened in the case besides the Motion.  It will then describe, in turn, the Plaintiffs' and the Defendants' arguments vis-à-vis the Motion.

1.    **The Case's Pre-Motion Background.**

On May 15, 2015, Salazar, as the personal representative of the Estate of Marquez, filed a complaint in the United States District Court for the District of New Mexico in Salazar v. San Juan County Detention Center, et al., No. CIV 15-0417 JB/LF, at 1 (D.N.M., filed on May 15, 2015)("Salazar Complaint").  On June 12, 2015, C. Carter, as the personal representative of the Estate of W. Carter, filed a complaint in the District Court for the District of New Mexico in Carter v. San Juan County Detention Center, et al., No. CIV 15-0497 JB/LF, at 1(D.N.M., filed on June 12, 2015)("Carter Complaint").   On June 22, 2015, C. Jones, as the personal representative of the Estate of S. Jones, filed a complaint in the District of New Mexico in Jones v. San Juan County Detention Center, et al., No. CIV 15-0526 JB/LF, at 1 (D.N.M., filed on June 22, 2015) ("Jones Complaint").  See Jones Complaint at 1.  Each of the three individual plaintiffs assert causes of action for: (i) violations of the Eighth Amendment's prohibition on cruel and unusual punishment under 42 U.S.C. § 1983; (ii) negligence; (iii) violations of the Americans With Disabilities Act, 42 U.S.C. §§ 12131-12134 ("ADA"); and (iv) wrongful death.  See Salazar Complaint ¶¶ 73-97, at 9-13; Carter Complaint ¶¶ 38-64, at 6-10; Jones Complaint ¶¶ 34-60, at 5-9.

On July 8, 2015, twenty-seven plaintiffs filed their Second Amended Complaint in the District of New Mexico in Burkee v. San Juan.  The twenty-seven plaintiffs in Burkee v. San

Juan assert causes of action for: (i) violations of the Eighth Amendment's prohibition of cruel and unusual punishment under 42 U.S.C. § 1983; (ii) negligence; (iii) ADA violations; and (iv) intentional infliction of emotional distress.  See Burkee Complaint ¶¶ 154-178, at 21-25.  They also request the same declaratory relief as the individual plaintiffs in Salazar v. San Juan, Carter v. San Juan, Jones v. San Juan.  See Burkee Complaint ¶¶ 179-182, at 25.

The four cases -- Salazar v. San Juan, Carter v. San Juan, Jones v. San Juan, and Burkee v. San Juan -- were subsequently consolidated before the Court for the purposes of discovery and motions, but the parties agree that they will be tried separately.  See Transcript of Hearing at 3:18-9:4 (taken September 24, 2105)(Court)("Sept. 24th Tr.");[3] See Transcript of Hearing at 13:7-22 (Childress, Court, Hatfield, Kelly, Mowery, Park).

**2.      County Defendants' Motion.**

The County Defendants request that the Court dismiss the Plaintiffs' claim under the ADA, see Motion at 5, and the Plaintiffs' state law claims for negligence and intentional infliction of emotional distress, see Motion at 3, in the Burkee Complaint.  In seeking a dismissal of the Plaintiffs' state law claims, the County Defendants assert that that the Plaintiffs' "[s]tate law tort claims against governmental entities are governed by the New Mexico Torts Claims Act."  Motion at 3.; See NMSA § 41-4-2 (providing that "governmental entities and public employees shall only be liable within the limitations of the [NMTCA.]")  The County Defendants assert that the Plaintiffs "cannot point to a waiver of immunity for the asserted [state law] claims," immunity applies to the County Defendants, and, as a result of the immunity for

---

[3]The Court's citations to the transcript for this hearing refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

the County Defendants being intact, the Plaintiffs' state law claims should be dismissed.  See Motion 3-4.

The County Defendants request that the Court dismiss the Plaintiffs' ADA claim.  In seeking a dismissal of the Plaintiffs' ADA claim, the County Defendants assert that the ADA claim does not meet the pleading requirements of Bell Atlantic v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 692 (2009), and is merely an insufficient, "the-defendant-unlawfully-harmed-me" accusation, that fails as a matter of law.  Motion at 5.  The County Defendants also assert that the Plaintiffs fail to "'isolate the allegedly unconstitutional acts of each defendant, and thereby [do] not provide adequate notice as to the nature of their claims against [them.]'" See Motion at 5 (quoting Robbins v. Okla. Ex rel. Dep't of Human Servs., 519 F.3d 1242, 1249-50 (10th Cir. 2008)).

### 3.    The Response in Opposition to the Motion.

In response to the County Defendants' Motion, the Plaintiffs responded with the Plaintiffs' Response to Defendant San Juan County Detention Center's Motion to Dismiss Americans with Disabilities Act Claim and State Law Claims, filed on January 12, 2016 (Doc. 168)("Response").  To counter the County Defendants' Motion, the Plaintiffs assert that "a dismissal under Rule 12(b)(6) is only appropriate when it is apparent that a Plaintiff" can prove no set of facts which would entitle him to relief.  See Response at 3-4.  The Plaintiffs assert that the County Defendants' actions resulted in constitutional violations rising to the level of deliberate indifference, are actionable under New Mexico state tort law as well as under federal law, and therefore should survive County Defendants' Motion.  See Response at 3-4.

In response to the County Defendants' Motion to dismiss the ADA claim, the Plaintiffs agree that some of the ADA violations asserted "will be more difficult to prove" and sought

leave to amend to include additional detail, and stipulated to the dismissal of all ADA claims against the County Defendants for all Plaintiffs with the exception of: (i) Derrick; (ii) Gutierrez; (iii) Williams; (iv) Martinez; (v) Page; and (vi) Trujillo.  See Response at 6.  The Plaintiffs assert that "each of the plaintiffs listed in 1-5 above has a clear ADA claim as set forth in the Second Amended Complaint."[4]  Response at 6.

### 4.  **The Reply**.

In reply to the Plaintiffs' Response, the County Defendants filed their Reply on Motion to Dismiss Americans with Disabilities Act Claim and State Law Claims on January 20, 2016 (Doc. 187)("Reply").  In the Reply, the County Defendants reiterate that the Plaintiffs fail to present a viable state law claim that will remove the NMTCA's statutory immunity,  see Reply at 2-3, and that the Plaintiffs' contentions for the remaining six Plaintiffs for the ADA claim are still insufficient, see Reply at 3-4.

### 5.   **The Hearing on the Motion**.

The Court held a hearing on the Motion and other pending matters on February 18, 2016. See Transcript of Hearing at 54:21-57:10, No. CV 15-0439.  The County Defendants briefly re-asserted their arguments from their briefing that the Plaintiffs' ADA claim was insufficient and that the New Mexico state law claims of negligence and intentional infliction of emotional distress were barred because, under the New Mexico Tort Claims Act, the County Defendants

---

[4] The Plaintiffs' Response lists six Plaintiffs for whom it will maintain the ADA claim: (i) Derrick; (ii) Gutierrez; (iii) Williams; (iv) Martinez; (v) Page; and (vi) Trujillo.  See Response at 6.  This statement, however, is contradicted by the subsequent sentence in the Plaintiffs' Response, which states  that "each of the plaintiffs listed in 1-5 above has a clear ADA claim as set forth in the Second Amended Complaint." Response at 6.  The Court recognizes the discrepancy between listing six Plaintiffs for the ADA complaint, and then immediately referring to them as "1-5."   The Court treats this discrepancy as an error, and interprets the Plaintiffs' Response to dismiss the ADA Claim for all Plaintiffs except for the six enumerated Plaintiffs listed in the Response.

maintained sovereign immunity from suit.  See Tr. at 55:2-56:18.  The County Defendants reiterated their arguments from their Motion and Reply brief that NMTCA § 41-4-9 did not waive state sovereign immunity in instances where state actors contracted with a private company to provide medical care.  See Tr. at 55:14-56:1.  The County Defendants reiterated from their Motion and Reply that sovereign immunity is not waived under the NMTCA when state law enforcement officers act negligently and that there must be a showing of intentional conduct, and that the intentional tortious conduct alleged must be enumerated under NMTCA § 41-4-12.  See Tr. at 56:1-56:18.  When the Court asked if the Plaintiffs had anything further, the Plaintiffs responded that they did not.  See Tr. at 57:5-57:7.  The Court indicated that it was inclined to grant the Motion.  See Tr. at 57:8-57:9.

## LAW REGARDING RULE 12(B)(6) MOTIONS

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. at 677–78 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. at 570). Under Rule 12(b)(6), the Court accepts as true all well-pled factual allegations in the complaint and draws all reasonable inferences from those facts in the Plaintiffs' favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006).  "The allegations must be enough that, if assumed to be true, the Plaintiffs plausibly (not just speculatively) ha[ve] a claim for relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).

A complaint fails to state a claim when it makes conclusory allegations of liability without supporting factual content. See Bell Atlantic Corp. v. Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. at 678-79. A complaint must set forth sufficient facts to raise a plausible inference that the defendant is liable for the misconduct alleged. See Ashcroft v. Iqbal,

556 U.S. at 677-78. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555-56.  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. at 555-56).

Furthermore, while the court must accept all the factual allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. at 678.  Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384 (10th Cir. 1997)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir.2008).

## LAW REGARDING THE ADA

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §

12132.  42 U.S.C. § 12102 provides that the term "disability" means, with respect to an individual:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).  Major-life activities include such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working.  See Poindexter v. Atchison, Topeka and Santa Fe Ry. Co., 168 F.3d 1228, 1231 (10th Cir. 1999).

Federal courts have described the ADA as "a general prohibition against discrimination by public entities, regardless of activity."  New Directions Treatment Servs. v. City of Reading, 2007 U.S. App. LEXIS 14025, at *12 (3d Cir. 2007).  See PGA Tour, Inc. v. Martin, 532 U.S. 661, 674 (2001)("Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals.").   "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)."  PGA Tour, Inc. v. Martin, 532 U.S. at 675 (internal footnotes omitted).  To prove an ADA violation, a plaintiff must establish: "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability."  Hargrave v. Vermont, 340 F.3d 27, 34-35 (2d Cir. 2003).

Private entities that operate a "public accommodation" may also be liable under the ADA for discrimination against disabled individuals "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). For the purposes of applying the Act to providers of public accommodations, "discrimination" includes

> failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii). Accordingly, the statute implicates three inquiries: (i) "whether the requested modification is 'reasonable;'" (ii) "whether it is 'necessary' for the disabled individual;" and (iii) "whether it would 'fundamentally alter the nature of' the [service being provided]." PGA Tour, Inc. v. Martin, 532 U.S. at 683, n.38 (quoting 42 U.S.C. § 12182(b)(A)(ii)).

## NEW MEXICO LAW REGARDING NEGLIGENCE

Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach being a cause-in-fact of the plaintiff's damages. See Coffey v. United States, 870 F. Supp. 2d 1202, 1225 (D.N.M. 2012)(Browning, J.)(citing Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 6, 73 P.3d 181, 185-86. "In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person." Ramirez v. Armstrong, 1983-NMSC-104, ¶ 8, 673 P.2d 822, 825, overruled on other grounds by Folz v. State, 1990-NMSC-075, ¶ 3, 797 P.2d 246, 249. Generally, negligence is a question of fact for the jury. See Schear v. Bd. of Cty Comm'rs, 1984-NMSC-079, ¶ 4, 672, 687 P.2d 728,

729.  "A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant."  Schear v. Bd. of Cty Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d at 729. "Whether a duty exists is a question of law for the courts to decide."  Schear v. Bd. of Cty Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d at 729 (citation omitted).  Once courts recognize that a duty exists, that duty triggers "a legal obligation to conform to a certain standard of conduct to reduce the risk of harm to an individual or class of persons."  Baxter v. Noce, 1988-NMSC-024, ¶ 11, 51, 752 P.2d 240, 243.

New Mexico courts have stated that foreseeability of a plaintiff alone does not end the inquiry into whether the defendant owed a duty to the plaintiff.  See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 7, 73 P.3d at 186.  New Mexico courts have recognized that, "[u]ltimately, a duty exists only if the obligation of the defendant [is] one to which the law will give recognition and effect."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 187 (internal quotation marks omitted).  To determine whether the defendant's obligation is one to which the law will give recognition and effect, courts consider legal precedent, statutes, and other principles of law. See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 186.

"As a general rule, an individual has no duty to protect another from harm."  Grover v. Stechel, 2002-NMCA-049, ¶ 11, 143, 45 P.3d 80, 84.  "[C]ertain relationships, however, that give rise to such a duty [include]: (1) those involving common carriers, innkeepers, possessors of land; and (2) those who voluntarily or by legal mandate take the custody of another so as to deprive the other of his normal opportunities for protection."  Grover v. Stechel, 2002-NMCA-049, ¶ 11, 45 P.3d at 84.  "[W]hen a person has a duty to protect and the third party's act is foreseeable, 'such an act whether innocent, negligent, intentionally tortious, or criminal does not

- 15 -

prevent the [person who has a duty to protect] from being liable for harm caused thereby.'" Reichert v. Atler, 1994-NMSC-056, ¶ 11, 626, 875 P.2d 379, 382.

"[T]he responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 73 P.3d at 194. "The finder of fact must determine whether Defendant breached the duty of ordinary care by considering what a reasonably prudent individual would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all surrounding circumstances of the present case . . . ." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 73 P.3d at 195.

"A proximate cause of an injury is that which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury would not have occurred." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195. "It need not be the only cause, nor the last nor nearest cause." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195. "It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195.

## NEW MEXICO LAW REGARDING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The following elements must be proven to establish a claim of intentional infliction of emotional distress: "[(i)] the conduct in question was extreme and outrageous; [(ii)] the conduct of the defendant was intentional or in reckless disregard of the plaintiff; [(iii)] the plaintiff's mental distress was extreme and severe; and [(iv)] there is a causal connection between the

defendant's conduct and the claimant's mental distress." Trujillo v. N. Rio Arriba Elec. Coop., Inc., 2002-NMSC-004, ¶ 25, 41 P.3d 333, 342.  For purposes of the tort of intentional infliction of emotional distress, New Mexico law adopts the Restatement (Second) of Torts' definition of extreme and outrageous conduct.  See Trujillo v. N. Rio Arriba Elec. Coop., Inc., 2002-NMSC-004, ¶ 25, 41 P.3d at 342.  See UJI 13-1628 NMRA ("Extreme and outrageous conduct is that which goes beyond bounds of common decency and is atrocious and intolerable to the ordinary person.").  The Restatement (Second) of Torts § 46 states:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Restatement (Second) of Torts § 46 cmt. d (1965).

Extreme and "[s]evere emotional distress means that a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances." Trujillo v. N. Rio Arriba Elec. Coop., Inc., 2002-NMSC-004, ¶ 28, 41 P.3d at 343 (internal quotation marks and citations omitted).  "The law intervenes only where the distress is so severe that no reasonable person could be expected to endure it." Trujillo v. N. Rio Arriba Elec. Coop., Inc., 2002-NMSC-004, ¶ 28, 41 P.3d at 343 (quoting Restatement (Second) of Torts § 46 cmt. j (1965)).  The extreme and severe emotional distress element of intentional infliction of emotional distress was not met, for example, where a plaintiff felt "lousy," was depressed, was prescribed Prozac, slept long hours, and displayed erratic eating habits. Trujillo v. N. Rio Arriba Elec. Coop., Inc., 2002-NMSC-004, ¶ 28, 41 P.3d at 343.

## LAW REGARDING THE NEW MEXICO TORT CLAIMS ACT

The New Mexico Tort Claims Act ("NMTCA") was enacted in recognition of "the inherent unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity."  NMSA 1978, § 41-4-2(A).  The New Mexico Legislature also recognized "that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done." NMSA 1978 § 41-4-2(A).  As a result, it was "declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act."  NMSA § 41-4-2(A).  The NMTCA is also "based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty."  NMSA § 41-4-2(C).

The NMTCA is the "exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act . . . ." NMSA § 41-4-17(A).  A governmental entity of New Mexico may not be sued unless the plaintiff's cause of action fits within one of the exceptions granted to governmental entities and public employees in the NMTCA.  See Begay v. State, 1985-NMCA-117, ¶ 8, 723 P.2d 252, 255, rev'd on other grounds by Smialek v. Begay, 1986-NMSC-049, 721 P.2d 1306.  "Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act." Begay v. State, 1985- NMCA-117,  ¶ 10, 723 P.2d 252 (internal quotation marks omitted).  Thus, if the court cannot find a specific waiver in the NMTCA, the court must dismiss the plaintiff's complaint.  See Begay v. State,1985- NMCA-117,  ¶ 10, 723 P.2d 252.

A plaintiff may not sue a governmental entity or its employees for a damage claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA contains a waiver of immunity.  "In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits for damages to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act."  Barreras v. N.M. Corr. Dep't, 2003-NMCA-027, ¶ 24, 62 P.3d 770, 776.  See Chavez v. City of Albuquerque, 1998-NMCA-004, ¶ 13, 952 P.2d 474, 477 (noting that a plaintiff cannot seek damages for violations of rights under the New Mexico Constitution unless immunity is waived under the NMTCA); Rubio v. Carlsbad Mun. Sch. Dist., 106 N.M. 446, 449, 744 P.2d 919, 922 (Ct.App.1987)(holding that no waiver of immunity exists for damages arising out of alleged educational malpractice claim against a school board.); Begay v. State, 1985- NMCA-117,  ¶ 13, 723 P.2d at 257 (finding that no waiver existed in NMTCA for suits for damages under Article II, § 11 of the New Mexico Constitution).  Those waivers are, however, relatively broad:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 [granting immunity from liability for torts committed within the scope of duty], does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

NMSA § 41-4-12.  Thus, an officer can be held liable for most intentional torts committed while in the course and scope of the officer's duties.

## ANALYSIS

The Court will grant the County Defendants' Motion.  First, the Plaintiffs' ADA claim in the Burkee Complaint fails to state a claim upon which relief can be granted.  The Plaintiffs do

not allege that any of the six remaining Plaintiffs in their ADA claim: (i) are "qualified" individuals with a disability discriminated; (ii) are excluded from participation in a public entity's services, programs or activities or was otherwise discriminated by such entity; or (iii) that such exclusion or discrimination was due to their disability.  Second, the Plaintiffs' New Mexico state law claims of negligence and intentional infliction of emotional distress in the Burkee Complaint do not present the Court with a claim upon which relief could be granted, because under NMTCA, the County Defendants' immunity from suit remains intact.

I.   **THE PLAINTIFFS' ADA CLAIM DOES NOT ALLEGE DISCRIMINATORY CONDUCT ON THE BASIS OF A QUALIFYING DISABILITY AND THEREFORE FAILS TO STATE A CLAIM UPON WHICH RELEIF CAN BE GRANTED.**

Regarding their ADA claim, the County Defendants correctly note that the Plaintiffs do not allege that the Plaintiffs are being "discriminated against because of a qualifying disability." Reply at 4-5.  The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."  42 U.S.C. § 12132.  To prove an ADA violation, a plaintiff must establish: "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability."  Hargrave v. Vermont, 340 F.3d at 34-35.  On their ADA claims, the Plaintiffs allege only that:

> 172.   Defendants herein were required by law to observe and adhere to common law and statutory laws and civil rights laws and guarantees in the performance of their duties to or for those who are disable [sic] and are detained at the San Juan County Detention Center.

> 173.   Defendants violated their duties under the ADA to make accommodations to plaintiffs with known, obvious, and disclosed disabilities.

> 174.    As a result of defendants' actions, plaintiffs suffered damages as described herein and in an amount to be proven at trial and are entitled to damages, attorneys' fees and costs.

Burkee Complaint ¶¶ 172-74, at 24.   In response to the County Defendants' Motion, the Plaintiffs stipulate to the dismissal of all ADA claims against the County Defendants with the exception of (i) Derrick; (ii) Gutierrez; (iii) Williams; (iv) Martinez; (v) Page; and (vi) Trujillo and that "each of the plaintiffs listed in 1-5 above has a clear ADA claim as set forth in the Second Amended Complaint." [5]  See Response at 6.

The Court agrees with the County Defendants that none of the six remaining Plaintiffs in the Burkee Complaint whom the Plaintiffs allege "ha[ve] a clear ADA claim as set forth in the Second Amended Complaint," see Response at 6, are individuals with a "qualified disability," or that they were "excluded from participation in a public entity's services, programs, or activities or were otherwise discriminated against by a public entity" on the basis of that disability.  See Hargrave v. Vermont, 340 F.3d at 34-35.  While the remaining six ADA Plaintiffs assert that they received inadequate medical treatment at the San Juan County Detention Center, they do not allege that "the alleged inadequacy was due to any qualifying disability."  Reply at 4-5.

The ADA also provides, however, that for the purposes of applying the ADA to providers of public accommodations, "discrimination" includes:

> failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

---

[5] See footnote 4.

42 U.S.C. § 12182(b)(2)(A)(ii).  Accordingly, the statute implicates three inquiries: (i) "whether the requested modification is 'reasonable;'" (ii) "whether it is 'necessary' for the disabled individual;" and (iii) "whether it would 'fundamentally alter the nature of' the [service being provided]."   PGA Tour, Inc. v. Martin, 532 U.S. at 683, n.38 (quoting 42 U.S.C. § 12182(b)(A)(ii)).  The Plaintiffs' allegations again, however, fall short.  The Plaintiffs in the Burkee Complaint do not allege that any of the six remaining Plaintiffs asserting ADA violations have a qualifying disability; that they requested a modification in policies, practices, or procedures; or that such a request was reasonable.  Because the Plaintiffs "fail to set forth sufficient facts to raise a plausible inference," Ashcroft v. Iqbal, 556 U.S. at 677-78, that the County Defendants are liable for the alleged ADA violations, the Court concludes that their ADA claim is insufficient and fails to state a claim upon which relief can be granted.

## II.    THE PLAINTIFFS' NEW MEXICO STATE LAW CLAIMS OF NEGLIGENCE AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS DO NOT TRIGGER A WAIVER OF THE COUNTY DEFENDANTS' IMMUNITY UNDER NEW MEXICO LAW.

The New Mexico Legislature enacted the NMTCA "in response to the New Mexico Supreme Court's decision to abolish state sovereign immunity in Hicks v. State."  Brenneman v. Bd. of Regents of University of N.M., 2004-NMCA-003, ¶ 5, 84 P.3d 685, 686 (citing Hicks v. State, 1975-NMSC-056, 544 P.2d 1153, superseded by statute as stated in Electro-Jet Tool Mfg. Co. v. City of Albuquerque, 1992-NMSC-060, 845 P.2d 770).  The NMTCA provides: "[G]overnmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act."  NMSA § 41-4-5. See Upton v. Clovis Municipal Sch. Dist., 2006-NMSC-040, ¶ 8, 141 P.3d 1259, 1261 ("The TCA grants all government entities and their employees general immunity from actions in tort, but waives that immunity in certain specified circumstances.").  Thus, the Plaintiffs' claims for

negligence and intentional infliction of emotional distress, as against a governmental entity or a public employee, must fit within one of the exceptions to the immunity set forth in §§ 41-4-5 to 41-4-12 of the NMTCA.  See Pemberton v. Cordova, 1987-NMCA-020, ¶ 4, 734 P.2d 254, 255.

Here, the Plaintiffs do not point to a waiver of immunity for their negligence and intentional infliction of emotional distress claims.  Rather, the Plaintiffs, in their Response to the Motion, state that they "have specifically alleged [] constitutional violations."  Response at 5. The Plaintiffs argue that the "lesson of Lessen[6] is that allegations of serious constitutional violations rising to the level of deliberate indifference to inmates' medical needs -- indeed, a pattern and practice of such deliberate indifference -- is actionable in state tort as well as under federal law."  Response at 5.  This argument is not persuasive, as the Court must determine whether the Plaintiffs' claims in the Burkee Complaint waive the County Defendants' immunity. The Plaintiffs' claims are for negligence and intentional infliction of emotional distress, and not deliberate indifference.  The Court analyzes whether the New Mexico law waives sovereign immunity for Plaintiffs' claims of negligence and intentional infliction of emotional distress under the NMTCA.

The Defendants highlight this fact and assert that the Plaintiffs "cannot point to a waiver of immunity for the asserted claims."  Motion at 4.  The Court has reviewed the waivers of immunity set forth in Sections 41-4-5 to 41-4-12 of the NMTCA and agrees with the Defendants that the only potentially applicable waivers the Plaintiffs can claim are § 41-4-9 -- for operation of certain medical facilities -- and § 41-4-12 for certain acts of law enforcement.  Section 41-4-9 provides:

---

[6] The Plaintiffs refer to the New Mexico Court of Appeals decision in Lessen v. City of Albuquerque, 2008-NMCA-085, 187 P.3d at 179

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities.

NMSA § 41-4-9.  The Defendants are correct, however, that the Court of Appeals of New Mexico decision in Lessen forecloses the Plaintiffs' reliance on § 41-4-9.  See Motion at 4. There, an inmate was arrested and booked into the Metropolitan Detention Center ("MDC"). 2008-NMCA-085, ¶ 3, 187 P.3d at 180.  The City of Albuquerque contracted with Correctional Medical Services, Inc. ("CMS"), to provide the inmate a medical and mental health intake.  See 2008-NMCA-085, ¶ 3, 187 P.3d at 180.  During the intake, the inmate disclosed that he was a heroin user, and that he had prescriptions for Valium and hydrocodone.  See 2008-NMCA-085, ¶ 3, 187 P.3d at 180.  He was referred to the MDC detoxification unit, where his vital signs were regularly monitored and he received several medications.  See 2008-NMCA-085, ¶ 3, 187 P.3d at 180.  "Over the ensuing eleven hours, medical personnel noted that Decedent exhibited tremors, nausea, vomiting, and muscle aches and that he complained of sleeplessness," symptoms consistent with heroin withdrawal.  2008-NMCA-085, ¶ 3, 187 P.3d at 180.  Personnel also noted "bizarre behavior."  2008-NMCA-085, ¶ 3, 187 P.3d at 180.  The inmate was subsequently released from jail, at which point he wandered off from the jail parking lot into the nearby desert where he died of hypothermia.  See 2008-NMCA-085, ¶¶ 4-8, 187 P.3d at 180-81.

The Court of Appeals of New Mexico rejected the plaintiff's argument that § 41-4-9 applied, holding that liability against a jail cannot be based on § 41-4-9 when the jail has contracted with a private entity to provide medical services.  See 2008-NMCA-085, ¶¶ 28-30, 187 P.3d at 185.  The Court of Appeals of New Mexico explained:

We agree with the general proposition stated in Estelle[7] and Ancata[8] that governmental entities must provide appropriate medical care to persons they incarcerate.  See Estelle, 429 U.S. at 103; Ancata, 769 F.2d at 705.  Such governmental entities cannot escape that duty by contracting with third parties to provide the medical care, and a governmental entity "remains liable for any constitutional deprivations caused by the policies or customs of the [third party]."  Ancata, 769 F.2d at 705.  This is not to say, however, that a governmental entity's constitutional obligation equates with waiver of immunity for negligent operation of an infirmary under New Mexico's TCA.  If Plaintiff had alleged and could prove that the City's inadequate medical care deprived Decedent of a constitutional right, Plaintiff might be entitled to recover under the waiver of immunity provided in Section 41-4-12.  But, as discussed in the next section of this opinion, Plaintiff's allegations of conduct that is merely negligent are insufficient to establish such a constitutional violation.  See Ancata 769 F.2d at 703 (indicating that claim of constitutional deprivation in the context of inadequate medical care requires a showing of "deliberate indifference to serious medical needs").  Because it was CMS that operated the infirmary or like facility at MDC, we affirm the district court's summary judgment in favor of the City under Section 41-4-9.

2008-NMCA-085, ¶¶ 30-31, 187 P.3d at 185.  Here, it is undisputed that, like in Lessen v. City of Albuquerque, San Juan County contracted with Correctional Healthcare and San Juan Regional Medical Center to provide healthcare at the San Juan County Detention Center.  Accordingly, the County Defendants cannot be held liable under § 41-4-9 for negligence and for intentional infliction of emotional distress.  In sum, the Plaintiffs cannot use § 41-4-9 to waive the County Defendants' immunity from suit for their negligence and intentional infliction of emotional distress claims.[9]

---

[7] Estelle v. Gamble, 429 U.S. 97 (1976).

[8] Ancata v. Prison Health Servs., 769 F.2d 700 (1985).

[9] The Supreme Court of New Mexico, as predicted by the Court, did not find that NMTCA § 41-4-9 would waive the County Defendants' sovereign immunity for the Plaintiffs' negligence and intentional infliction of emotional distress claims.

The Court now turns to § 41-4-12 of the NMTCA, which "provides a waiver of immunity for certain torts that law enforcement officers commit and for negligence that causes a specified tort." Williams v. Bd. of Regents of University of New Mexico, 20 F. Supp. 1177, 1189-90 (D.N.M. 2014)(Browning, J.)(citing Oliveros v. Mitchell, 449 F.3d 1091, 1096 (10th Cir. 2006).

Section 41-4-12 provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

NMSA § 41-4-12.

> Thus, in order to state a tort claim under the waiver of immunity set out in Section 41-4-12, a plaintiff must demonstrate that the defendants were law enforcement officers acting within the scope of their duties, and that the plaintiff's injuries arose out of either a tort enumerated in this section or a deprivation of a right secured by law.

Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't, 1996-NMSC-021, ¶ 7, 916 P.2d 1313, 1316.

As the statutory definition of "law enforcement officer" includes "any full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense," NMSA § 41-4-3(D), correctional officers are law enforcement officers if and only if the facility in which they work primarily holds inmates awaiting trial rather than convicts, see Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1269 (D.N.M. 2010)(Browning, J.); Davis v. Bd. of Cty. Comm'rs of Dona Ana Cty., 1999-NMCA-110, ¶ 35, 987 P.2d at 1183. Compare Callaway v. N.M. Dep't of Corr., 1994-NMCA-049, ¶¶ 9-12, 875 P.2d 393, 397 (holding that correctional officers who work at

facilities that principally house individuals already convicted of crimes are not law enforcement officers), with Abalos v. Bernalillo Cty. Dist. Attorney's Office, 1987-NMCA-026, ¶¶ 26-30, 734 P.2d 794, 800 (holding that the director of a jail that housed primarily inmates awaiting trial was a law enforcement officer for the purposes of § 41-4-12).   The Plaintiffs do not specify whether the Plaintiffs were already convicted of crimes or whether they were awaiting trial.   The Plaintiffs refer to some of the Plaintiffs as "incarcerated," see Burkee Complaint ¶ 89, at 13, and assert that other Plaintiffs, after they allege were denied necessary medication, had to undergo medical tests to determine the extent of the injuries they incurred, see Burkee Complaint ¶ 96, at 14.   Based on these assertions, the San Juan County Detention Center appears to be a mixed facility, containing pre-trial detainees and people incarcerated for misdemeanor or lesser offenses.   The County Defendants have not asserted otherwise or presented evidence to the contrary.   Because the Plaintiffs have not alleged enough in the Burkee Complaint for the Court to determine the nature of the San Juan County Detention Center, under the standards set forth in Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal, the Plaintiffs' claims fail.

Section 41-4-12 "simply does not -- either on its face or through its construction by the New Mexico courts -- set forth a waiver of immunity for negligence."   Williams v. Bd. of Regents of University of New Mexico, 20 F. Supp. at 1193.   Moreover, the Court addressed this precise issue in Williams where it explained:

> Plaintiffs' confusion stems from the literal manner in which the New Mexico courts have interpreted the language of the statute, which waives immunity from liability for "injury . . . resulting from assault, battery, false imprisonment . . . ."   N.M. Stat. Ann. § 41-4-12 (emphasis added).   The courts interpret this waiver as encompassing any situation in which a law enforcement officer's actions "result" in injury from one of the enumerated intentional torts, even if the officer himself was not the one who committed the tort.   See Dickson v. City of Clovis, 2010-NMCA-058, ¶ 20, 242 P.3d at 403-04 ("[A]llegations of negligence based on one of the torts specified in Section 41-4-12 are appropriate only when a law enforcement officer's negligence allegedly caused a third party

to commit one of the enumerated intentional acts."); Methola v. Eddy Cty., 1980-NMSC-145, 622 P.2d 234; Weinstein v. City of Santa Fe, 1996-NMSC-021, 916 P.2d 1313.  If a law enforcement officer's negligence causes an inmate to be thrown to the wolves -- attacked, raped, or subjected to any of the other torts enumerated in the statute by people the officer should have known not to allow around the inmate -- the officer cannot hide behind the general rule of immunity against negligence claims.  See, e.g., 1980-NMSC-145, ¶¶ 2-4, 26, 622 P.2d at 235, 239.

It is upon these cases, Methola v. Eddy County and Weinstein v. City of Santa Fe, that the Plaintiffs rely, but the cases stand for what Bernalillo County says they do: one of § 41-4-12's enumerated torts must be the direct cause of the Plaintiff's injury, which in this case means that, "without demonstrating that Defendant CHC engaged in a specific tort found under that particular subsection of the NMTCA, Plaintiffs' claim of alleged negligent supervision against Defendant County fails and should be dismissed." Reply at 7.  As none of the six claims alleged in the SAC -- medical negligence, negligence per se based on the Emergency Medical Treatment and Active Labor Act, simple negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, or loss of consortium -- is on the list of torts enumerated in § 41-4-12, the Plaintiffs' claim of negligence is subject to immunity under § 41-4-4, and fails as a matter of law.

Williams, 20 F. Supp. at 1193-94.  Similarly, here neither the negligence nor intentional infliction of emotional distress claims in the Burkee Complaint are on the list of torts that § 41-4-12 enumerates.  Accordingly, for the reasons stated in Williams v. Bd. of Regents of University of New Mexico, the Court concludes that § 41-4-12 does not waive the County Defendants' immunity in the instant case.

Absent a waiver of the County Defendants' immunity for the Plaintiffs' state law claims of negligence and intentional infliction of emotional distress, the Plaintiffs are "unable to set forth sufficient facts to raise a plausible inference," Ashcroft v. Iqbal, 556 U.S. at 677-78, that the County Defendants are liable for the alleged negligence and intentional infliction of emotional distress.  The Court concludes that the Plaintiffs' New Mexico state law claims of negligence and intentional infliction of emotional distress fail to state a claim upon which relief can be granted.

In sum, the Court concludes that the Plaintiffs' ADA claim, and New Mexico state law claims of negligence and intentional infliction of emotional distress, in the Burkee Complaint fail to state a claim upon which relief can be granted.  The Court therefore grants the County Defendants' Motion.

**IT IS ORDERED** that the County Defendants, San Juan County Detention Center, San Juan County, and Thomas Havel's Motion to Dismiss Americans with Disabilities Act Claim and State Law Claims, filed December 2, 2015 (Doc. 116 in <u>Burkee v. San Juan</u>), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory M. Tucker
Mitchel S. Burns
Jennifer D. Yoder
Christian A. Hatfield
Tucker Burns Yoder & Hatfield Law Firm
Farmington, New Mexico

--and--

John Holland
Erica Grossman
Anna Holland Edwards
Holland, Holland Edwards & Grossman, P.C.
Denver, Colorado

　　　*Attorneys for the Plaintiffs*

Ronald K. Childress
Elaine D. Dailey
Uvashi Parkhani
Childress Law Firm
Albuquerque, New Mexico

　　　*Attorneys for Defendants San Juan County Detention Center, San Juan County, and*
　　　　*Thomas C. Havel*

- 29 -

Robert J. Curtis
Ellen M. Kelly
Civerolo Gralow Hill & Curtis P.A.
Albuquerque, New Mexico

    *Attorneys for Defendants San Juan Regional Medical Center, Eric Ketcham, and Cindy Ketcham*

Brett C. Eaton
W. Ann Maggiore
Butt Thornton & Baehr, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant Katie Moore*

Alfred A. Park
Kevin D. Fowler
Lawrence M. Marcus
Park & Associates LLC
Albuquerque, New Mexico

    *Attorneys for Defendant Correctional Healthcare Companies Inc.*

W. Mark Mowery
Jessica R. Terrazas
Rodey, Dickason, Sloan, Akin & Robb
Santa Fe, New Mexico

    *Attorneys for Presbyterian Medical Services*