# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

OLGA SALAZAR, Personal Representative
of the Estate of JESUS MARQUEZ,

       Plaintiff,

vs.                                                No. CIV 15-0417 JB/LF

SAN JUAN COUNTY DETENTION CENTER;
SAN JUAN COUNTY; SAN JUAN REGIONAL MEDICAL
CENTER; THOMAS C. HAVEL,
INDIVIDUALLY AND AS ADMINISTRATOR OF SJCDC;
DR. ERIC KETCHAM, INDIVIDUALLY; CINDY KETCHAM,
INDIVIDUALLY, and KATIE (Unknown Surname), RN,

       Defendants,

       <u>Consolidated with</u>

JESSE BERKEY; EARL CALLAHAN; LARIET CHARLES;
GORDON DOUGLAS DERRICK; AARON EATON;
CALVIN FINCH; PAUL GOULD; JOSEPH GUTIERREZ;
MARK HINOJOS; THOMAS KNIGHT; AURELIO MARQUEZ;
ANGELO MARTINEZ; MARK MARTINEZ; RUDY MARTINEZ;
VICTORIA MARTINEZ; PAUL MATAMOROS;
RICHARD MCDONALD; DEBBIE NEZ; DAVID PAGE;
STEVE PARRISH; CLIFFORD ROGERS; ADAM SCHUESSLER;
JASON TRUJILLO; FRANKLIN TSO; STEVE VALERIO;
JIMMY WEAHKEE, and HARRY WILLIAMS,

       Plaintiffs,

vs.                                                No. CIV 15-0439 JB/LF

SAN JUAN COUNTY DETENTION CENTER;
SAN JUAN COUNTY; CORRECTIONAL HEALTHCARE
COMPANIES, INC.; SAN JUAN REGIONAL
MEDICAL CENTER; PRESBYTERIAN MEDICAL
SERVICES; THOMAS C. HAVEL,
INDIVIDUALLY AND AS ADMINISTRATOR, and SAN JUAN
COUNTY DETENTION CENTER,

       Defendants,

<u>Consolidated with</u>

CHARLES CARTER, Personal Representative
of the Estate of WILLIAM "BILLY" CARTER,

       Plaintiff,

vs.                                            No. CIV 15-0497 JB/LF

SAN JUAN COUNTY DETENTION CENTER;
SAN JUAN COUNTY; SAN JUAN REGIONAL MEDICAL
CENTER; THOMAS C. HAVEL, INDIVIDUALLY
AND AS ADMINISTRATOR OF SJCDC; DR. ERIC
KETCHAM, INDIVIDUALLY, and CINDY KETCHAM,
INDIVIDUALLY,

       Defendants,

       <u>Consolidated with</u>

COREY JONES, Personal Representative
of the Estate of Sharon Jones,

       Plaintiff,

vs.                                            No. CIV 15-0526 JB/LF

SAN JUAN COUNTY DETENTION CENTER;
SAN JUAN COUNTY; SAN JUAN REGIONAL MEDICAL
CENTER; THOMAS C. HAVEL, INDIVIDUALLY
AND AS ADMINISTRATOR OF SJCDC; DR. ERIC
KETCHAM, INDIVIDUALLY, and CINDY KETCHAM,
INDIVIDUALLY,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

    **THIS MATTER** comes before the Court on the Plaintiffs Jesse Berkey, Aaron Eaton,

---

[1]The Court previously issued an Order that granted the Motion. <u>See</u> Order, filed March 31, 2017 (Doc. 427)("Order"). In that Order, the Court stated "[a]t a later date, the Court will issue a Memorandum Opinion detailing its rationale for its decision." Order at 2 n.1. This Memorandum Opinion and Order is the promised opinion, and details the Court's rationale for the previous Order, and enters an order remanding the case to state court.

Joseph Gutierrez, Aurelio Marquez, Rudy Martinez, Paul Matamoros, Clifford Rogers, Harry Williams and Calvin Finch's Motion for Remand to State Court, filed August 15, 2016 (Doc. 329)("Motion"). The Court held a hearing on October 3, 2016. The primary issue issues are: (i) whether the Court should decline to exercise its supplemental jurisdiction and remand to the Eleventh Judicial District Court, County of San Juan, State of New Mexico, the remaining state-law claims of Plaintiffs Jesse Berkey, Aaron Eaton, Joseph Gutierrez, Aurelio Marquez, Rudy Martinez, Clifford Rogers, Harry Williams, and Calvin Finch ("Remaining Plaintiffs") against Defendants San Juan Regional Medical Center, San Juan County, the San Juan County Detention Center, and Thomas C. Havel, as well as Plaintiff Jesse Berkey's remaining state claims against Defendant Presbyterian Medical Services, in No. CIV 15-0439; and (ii) whether the Court should remand Plaintiff Paul Matamoros' claims with the rest of the case. The Court concludes that: (i) the remaining Plaintiffs' federal claims in <u>Burkee, et al. v. San Juan County Detention Center, et al.</u>, No. CIV 15-0439, have been dismissed and, therefore, the Court declines to exercise its supplemental jurisdiction over the remaining Plaintiffs' remaining state-law claims; and (ii) the Court should remand Matamoros' claims with the rest of the case, even though he was not a named party until after the case was removed to federal court. Accordingly, the Court grants the Motion.

## FACTUAL BACKGROUND

This case arises from the Plaintiffs' incarcerations at the San Juan County Detention Center in San Juan County, New Mexico. <u>See</u> <u>Burkee, et al. v. San Juan County Detention Center, et al.</u>, No. CIV 15-00439, Second Amended Complaint ¶ 1, at 2, filed on July 8, 2015, (Doc. 27)("Burkee Complaint"). Defendant San Juan County is the public entity responsible for Defendant San Juan County Detention Center. <u>See</u> Burkee Complaint ¶ 11, at 3. Defendant

Thomas Havel is the San Juan County Detention Center Administrator. See Burkee Complaint ¶ 8, at 3 (collectively "The County Defendants"). Defendant San Juan Regional Medical Center ("San Juan Regional") provides medical care to inmates at the San Juan Detention Center. Burkee Complaint ¶ 6, at 2.

The Plaintiffs are individual residents of San Juan County who were and are incarcerated in the San Juan Detention Center between 2013 and the present. See Burkee Complaint ¶ 1, at 2. The Plaintiffs assert that they suffered various injuries while incarcerated at the San Juan Detention Center as a result of the County Defendants' violations of federal and New Mexico law. See Burkee Complaint ¶¶ 18-153, at 4-20.

## PROCEDURAL BACKGROUND

The parties have litigated this case for two years. According to the Plaintiffs, the parties have stipulated to the dismissal of all of the Plaintiffs' federal claims. See Motion at 1; Plaintiffs Eaton, Gould, Hinojos, McDonald, Parrish and A. Martinez' Stipulation of Dismissal for Correctional Healthcare Companies, Inc. with prejudice at 2, filed September 11, 2015 (Doc. 38); Plaintiffs Finch, Gutierrez, Marquez, R. Martinez & Tso's Stipulation of Dismissal for Correctional Healthcare Companies, Inc. with Prejudice at 2, filed September 22, 2015 (Doc. 41); Plaintiffs Valerio and Nez' Stipulation of Dismissal for Correctional Healthcare Companies, Inc. without prejudice at 2, filed October 12, 2015 (Doc. 58); Stipulation of Voluntary Dismissal of Plaintiff Derrick's Claims Against SJRMC in Case No. 1:15-cv-00439 at 1, filed October 13, 2015 (Doc. 60); Stipulation of Voluntary Dismissal of Plaintiff McDonald's Claims Against SJRMC in Case No. 1:15-cv-00439 at 1, filed October 13, 2015 (Doc. 61); Stipulation of Voluntary Dismissal of Plaintiff Derrick's Claims Against SJRMC in Case No. 1:15-cv-00439 at 1, filed October 13, 2015 (Doc. 62); Stipulation of Voluntary Dismissal of Plaintiff Nez's Claims

Against SJRMC in Case No. 1:15-cv-00439 at 1, filed October 13, 2015 (Doc. 63); Stipulation of

Voluntary Partial Dismissal of Plaintiff Knight's Claims Against SJRMC in Case No. 1:15-cv-

00439 at 1, filed October 13, 2015 (Doc. 64); Stipulation of Voluntary Dismissal of Plaintiff

Valerio's Claims Against SJRMC in Case No. 1:15-cv-00439 at 1, filed October 13, 2015 (Doc.

66); Stipulation of Voluntary Dismissal of Plaintiff Victoria Martinez's Claims Against SJRMC

in Case No. 1:15-cv-00439 at 1, filed October 14, 2015 (Doc. 69); Stipulation of Dismissal With

Prejudice of Claims by Plaintiffs Derrick, Eaton, Knight, Marquez, A. Martinez, V. Martinez,

Matamoras, McDonald, Nez, Parrish, Valerio, Weahkee, & Williams Against Defendant

Presbyterian Medical Services at 1, filed October 26, 2015 (Doc. 74); Stipulation of Dismissal

Without Prejudice of Claims by Plaintiffs Callahan, Finch, Gutierrez and Rogers Against

Defendant Presbyterian Medical Services at 2, filed October 26, 2015 (Doc. 75); Stipulation of

Partial Dismissal Without Prejudice of Claims by Plaintiff Berkey Against Defendant

Presbyterian Medical Services at 2, filed October 26, 2015 (Doc. 76); Stipulation of Dismissal

With Prejudice of Claims by Plaintiffs Gould, R. Martinez, Schuessler, and Tso Against

Defendant Presbyterian Medical Services at 2, filed November 4, 2015 (Doc. 80); Stipulation of

Voluntary Dismissal of Claims of Plaintiffs Nez and Weahkee Against San Juan County, San

Juan County Detention Center and Thomas C. Havel at 2, filed November 12, 2015 (Doc. 89);

Stipulation of Voluntary Dismissal of Claims of Plaintiffs Paul Gould, Rudy Martinez, Richard

McDonald, Adam Schuessler, and Harry Williams Against San Juan County, San Juan County

Detention Center and Thomas C. Havel at 2, filed November 16, 2015 (Doc. 95); Plaintiff Jimmy

Weahkee's Stipulation of Dismissal For Correctional Healthcare Companies, Inc. Without

Prejudice at 2, filed November 18, 2015 (Doc. 99); Stipulation of Voluntary Dismissal of

Plaintiff Weahkee's Claims Against SJRMC in Case No. 1:15-cv-00439 at 1, filed January 7,

2016 (Doc. 159); Stipulated Dismissal With Prejudice of All Federal Claims Against San Juan County, San Juan County Detention Center, and Thomas Havel in Burkey, et al., v. San Juan County Detention Center, et al., in Cause No. 1:15-cv-00439 JB/LF at 2, filed May 26, 2016 (Doc. 312); Stipulated Dismissal With Prejudice of All Federal Claims Against San Juan County, San Juan County Detention Center, and Thomas Havel in Berkey, et al., v. San Juan County Detention Center, et al., in Cause No. 1:15-cv-00439 JB/LF at 2, filed May 26, 2016 (Doc. 313); Stipulation of Dismissal with Prejudice of any Dental Claims by Plaintiffs Earl Callahan, Calvin Finch, Joseph Gutierrez and Clifford Douglas Rogers Against Defendant Presbyterian Medical Services at 1-2, filed June 6, 2016 (Doc. 318); Stipulation of Dismissal with Prejudice of the Claims of Plaintiffs Lariat Charles, Mark Ryan Hinojos, David Lee Page and Jason Trujillo Against Defendant Presbyterian Medical Services at 1, filed June 9, 2016 (Doc. 319); Stipulated Dismissal with Prejudice of the Claims of Thomas Knight, David Page, Earl Callahan, Adam Schuessler, Mark Hinojos, Steve Parrish, Paul Gould, Angelo Martinez, Mark Martinez, Franklin Tso, Jason Trujillo, Lariat Charles, Against Defendant San Juan Regional Medical Center at 1-2, filed August 3, 2016 (Doc. 325)(hereinafter collectively "Stipulated Dismissals"). The Plaintiffs now move to remand the case to state court.

### 1.     The Motion.

The Plaintiffs argue that, because they have stipulated to the dismissal of all of their federal claims, the Court should remand the case to state court. See Motion at 1. The Plaintiffs indicate that they have agreed with San Juan Regional and with the County Defendants that the Plaintiffs "will not move for leave to amend their complaint and to re-allege their federal claims and that the dismissals entered by the Court shall be considered by the parties to be dismissal with prejudice." Motion at 1. The Plaintiffs argue that "'[t]he Tenth Circuit has held that district

courts should presume to decline jurisdiction over state claims when federal claims no longer remain.'" Motion at 3 (quoting Young v. City of Albuquerque, 77 F. Supp. 3d 1154, 1185 (D.N.M. 2014)(Browning, J.)). The Plaintiffs argue that their "federal claims have all been dismissed and the only remaining claims are state claims." Motion at 4. They note that "quasi-related death cases that were combined for purposes of discovery were mediated in June and July of 2016, with one having settled. Those death cases continue to assert federal claims, whereas these remaining . . . plaintiffs do not assert similar federal claims." Motion at 4.

For these reasons, the Remaining Plaintiffs move the Court to remand their remaining state claims against San Juan Regional and the County Defendants, and Berkey's remaining state claims against Presbyterian Medical, to state court. They also note that Matamoros was not named as a plaintiff until after the case was removed to federal court. See Motion at 4-5. Accordingly, the Plaintiffs ask that, if the Court cannot remand Matamoros' claims to state court, the Court dismiss his claims without prejudice so that he may re-file them in state court. Motion at 5.

2.      **The County Defendants' Response.**

The County Defendants respond to the Motion. See Response to Motion for Remand for State Court, filed August 25, 2016 (Doc. 338)("Response 1"). The County Defendants ask the Court to "retain jurisdiction and dismiss the state law claims against the County Defendants with prejudice." Response 1 at 1. The County Defendants argue that "district courts should seek to exercise supplemental jurisdiction in an effort to vindicate values of economy, convenience, fairness, and comity." Response 1 at 3 (quoting OneBeacon Am. Ins. Co. v. San Juan Cty., 2013 WL 5934351, at *2 (D.N.M. 2013)(Browning, J.)). The County Defendants assert that "the exercise of jurisdiction is especially appropriate in cases where the parties have expended a great

deal of time and energy on the state law claims." Response 1 at 4 (citing <u>Anglemyer v. Hamilton</u> <u>Cty. Hosp.</u>, 58 F.3d 533, 541 (10th Cir. 1995)). The County Defendants contend that, because they have litigated multiple state issues before the Court, the Court should retain jurisdiction. <u>See</u> Response 1 at 5. They add that "the state law claims do not raise any complex issues under state law." Response 1 at 5.

### 3. San Juan Regional's Response.

San Juan Regional filed a separate response. <u>See</u> Defendant SJRMC's Response to Plaintiffs' Motion to Remand to State Court, filed August 30, 2016 (Doc. 339)("Response 2"). San Juan Regional asserts that the "parties have not reached any agreement about a motion to amend Plaintiffs' Second Amended Complaint." Response 2 at 1. San Juan Regional notes that the "Plaintiffs have not [filed] a motion to amend, even though Plaintiffs' planned amendment of their Second Amended Complaint has been one of the major themes of their case." Response 2 at 2. San Juan Regional contends that the Plaintiffs' assertion that the parties "'have agreed that Plaintiffs will not move for leave to amend their complaint to re-allege their federal claims and that the dismissal entered by the Court shall be considered by the parties to be dismissal with prejudice'" is not true. Response 2 at 3 (quoting Motion at 1). San Juan Regional argues that the parties "cannot agree on what language would make the dismissal permanent if this Court remands any portion of <u>Berkey</u>." Response 2 at 3. "SJRMC cannot be assured that Plaintiffs will not be allowed to re-allege their federal claims in state or federal court, should they choose to try." Response 2 at 3. San Juan Regional posits that "the Order of Dismissal of the federal claims against SJRMC is an interlocutory order that this Court can reconsider at any time." Response 2 at 3. San Juan Regional also argues that, "[g]iven the Court's familiarity with the procedural history and facts of <u>Berkey</u>, remanding any portion of this case to the state courts,

even if only the claims of Plaintiff Matamoros are remanded, would be unduly expensive, inconvenient and unfair to SJRMC." Response 2 at 5.

**4. The Reply.**

The Plaintiffs reply to the Responses. See Reply to Defendant SJRMC's Response to Plaintiff's Motion to Remand to State Court, filed September 9, 2016 (Doc. 352)("Reply"). The Plaintiffs argue that "the dismissal of the federal claims against SJRMC with prejudice by Court order . . . and subsequent withdrawal of Plaintiffs' Motion to Amend Order of Dismissal of All Federal Claims Against San Juan Regional Medical Center . . . moots the issue of whether Plaintiffs will further move to amend." Reply at 1 (citing Order Dismissing All Federal Claims Against Defendant San Juan Regional Center with Prejudice in 1:15-cv-00439 JB/LF, filed November 17, 2015 (Doc. 97)). They argue that "[t]he dismissal of the federal claims with prejudice is an order of the Court." Reply at 1.

The Plaintiffs contend that the only reason they have not stipulated not to amend their Complaint to re-allege federal claims is because "counsel could not agree on the language of the stipulated dismissal." Reply at 2. The Plaintiffs assert that they "have repeatedly agreed to dismissal with prejudice as a final order." Reply at 2. The Plaintiffs argue that "the only remaining question is not whether plaintiffs should further amend the complaint, but whether the state law claims should be remanded, which was the point of the Motion." Reply at 2.

**5. The Hearing.**

The Court held a hearing on October 3, 2016. See Draft Transcript of Motion Proceeding (taken October 3, 2016)("Tr.").[2] The Plaintiffs began by saying "we've effectively now dismissed all federal claims against all of the defendants." Tr. at 3:21-23 (Hatfield). The County

---

[2] The Court's citations to the hearing's transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Defendants noted that, "they never did file the motion to amend and of course that was one of our arguments that they should not be allowed to amend it at this time." Tr. at 7:4-7 (Childress). The County Defendants continued: "[B]ut we don't think it would be proper to allow the plaintiffs to remand to state court and start this process all over again of attempting to bring the County Defendant[s] back in after they've missed the time limit to amend." Tr. at 8:11-16 (Childress). The Court then asked the Plaintiffs: "[A]s far as Mr. Childress' clients, can you represent that you're not going to try to bring him back in with any sort of state or federal claims?" Tr. at 8:18-21 (Court). The Plaintiffs responded: "[W]e do not intend to do that." Tr. at 8:22 (Hatfield). The Court asked the County Defendants: "I think you're pretty protected, don't you?" Tr. at 8:5-6 (Court). The County Defendants indicated that they were satisfied with that response. See Tr. at 8:7-8 (Childress).

San Juan Regional then argued that the Plaintiffs have never made an effort "to disentangle the factual basis for the state claims that are in their complaint . . . from the federal constitutional claims against the hospital." Tr. at 9:15-17, 10:18-19 (Kelly). San Juan Regional continued that it was concerned about the status of the federal claims against it. See Tr. at 13:6-10 (Kelly). Specifically, it noted that the Court issued an "order last year that the Plaintiffs had agreed to dismissing the federal claims against [San Juan Regional] with prejudice . . . so we now have an interlocutory order dismissing the claims . . . actually all the federal claims against the hospital with prejudice." Tr. at 14:11-19 (Kelly). San Juan Regional continued that "it is very unclear what the status of that interlocutory order is if the remaining state claims get remanded. Because it's not a final judgment that the Court would be entering to remand." Tr. 14:21-25 (Kelly). The Court then asked the Plaintiffs if they had "any intention of bringing federal claims if this case were remanded . . . against the San Juan Regional Medical Center."

Tr. at 15:22-24 (Court).  The Plaintiffs responded: "No, Your Honor."  Tr. at 15:25 (Hatfield).

The Plaintiffs added: "[W]hen we withdrew our objection to the dismissal with prejudice that the

Court entered last year, I assumed that to be final, and that's the positon we've taken with Ms.

Kelly."  Tr. at 15:1-5 (Hatfield).

> The Court then stated:
>
> The federal claims are out.  I think we've done our work, we've done a lot of
> other work, including on state claims . . . but there [is a] fair amount of work left
> to be done here, so I think we're at a point where it should go to state court.  And
> so I am going to grant the motion for remand to state court . . . .

Tr. at 17:12-18 (Court).

## LAW REGARDING SUPPLEMENTAL JURISDICTION

The federal courts are "courts of limited jurisdiction."  Exxon Mobil Corp. v. Allapattah

Servs., Inc., 545 U.S. 546, 552 (2005).  Federal courts "possess only that power authorized by

[the] Constitution and statute."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377

(1994).  Among the powers that Congress has bestowed upon the courts is the power to hear

controversies arising under federal law -- federal-question jurisdiction -- and controversies

arising between citizens of different states -- diversity jurisdiction.  See 28 U.S.C. §§ 1331-32.

Section 1367 additionally grants the federal courts power to hear claims over which the court

otherwise lacks original jurisdiction, if those claims are part of the same constitutional case as

claims over which the court has original jurisdiction.  See 28 U.S.C. § 1367(a).

### 1.    Congressional Authority to Exercise Supplemental Jurisdiction.

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a

controversy, "it is well established -- in certain classes of cases -- that, once a court has original

jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over

additional claims that are part of the same case or controversy."  Exxon Mobil Corp. v.

Allapattah Servs., Inc., 545 U.S. at 552. The Supreme Court of the United States has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines, pendent jurisdiction and ancillary jurisdiction; § 1367's passage codified those forms of jurisdiction, and additionally permitted courts to hear cases under pendent-party jurisdiction,[3] which the Supreme Court had previously disallowed in Finley v. United States, 490 U.S. 545 (1989). Federal courts may exercise pendent jurisdiction over state law claims when "state and federal claims . . . derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Supplemental jurisdiction gives federal courts the flexibility to hear a cause of action after the introduction of third parties, whose insertion into the litigation does not have the support of any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it. See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, the Honorable William H. Rehnquist, then-Chief Justice of the United States, created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms. See James v. Chavez, No. CIV 09–0540, 2011 WL 6013547, at *5 (D.N.M. Nov. 21, 2011)(Browning, J.). In response to the Committee's findings regarding pendent, ancillary, and pendent-party jurisdiction, Congress codified the doctrines when it passed the Judicial Improvements Act of 1990:

---

[3]Pendent-party jurisdiction occurs when "a plaintiff with a federal claim against one defendant appends a state law claim, arising from a common nucleus of facts, against *another defendant*, who could not otherwise be sued in a federal court." Richard H. Fallon, Jr., John F. Manning, Daniel J. Meltzer, & David L. Shapiro, Hart and Wechsler's The Federal Courts and The Federal System 867 (7th ed. 2015)(emphasis in original)("Hart and Wechsler"). Ancillary jurisdiction refers to supplemental jurisdiction in diversity cases. See Hart and Wechsler at 1447. Pendent jurisdiction refers to supplemental jurisdiction in federal question cases. See Hart and Wechsler at 861.

[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence." Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

## 2. The District Courts' Discretion to Exercise Supplemental Jurisdiction.

The United States Court of Appeals for the Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction not as a litigant's right, but as a matter of judicial discretion. See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)). In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction. The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction. 383 U.S. at 726.

Similarly, the supplemental jurisdiction statute enumerates four factors that the court should consider:

(1)     the claim raises a novel or complex issue of State law,

(2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity . . . ." Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164. Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction. See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("[S]ection 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Exec. Software N. Am. v. U.S. Dist. Ct., 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."), overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp., 533 F.3d 1087 (9th Cir. 2008); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c) . . . ."); Bonadeo v. Lujan, No. CIV 08-0812, 2009 WL 1324119, at *8 (D.N.M. Apr. 30, 2009)(Browning, J.)("28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists.").

The Tenth Circuit has held that district courts should presume to decline jurisdiction over state claims when federal claims no longer remain: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Koch v. City of Del City, 660 F.3d 1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)). This proclamation is consistent with the Supreme Court's statement that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Amer. v. Gibbs, 383 U.S. at 726 (footnote omitted).

The Court has previously stated that a district court should usually decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c) applies. See Armijo v. New Mexico, No. CIV 08-0336, 2009 WL 3672828, at *4 (D.N.M. Sept. 30, 2009)(Browning, J.)("The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it."). The Tenth Circuit has recognized that a district court does not "abuse [its] discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it has dismissed all claims over which it has original jurisdiction." Muller v. Culbertson, 408 F. App'x 194, 197 (10th Cir. 2011)(unpublished)[4](internal quotation marks omitted).

---

[4]Muller v. Culbertson is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value

<u>**ANALYSIS**</u>

The Court concludes that: (i) the remaining Plaintiffs' federal claims in <u>Burkee, et al. v.</u> <u>San Juan County Detention Center, et al.</u>, No. CIV 15-0439, have been dismissed and, therefore, the Court declines to exercise its supplemental jurisdiction over the remaining Plaintiffs' remaining state-law claims; and (ii) the Court will remand Matamoros' claims with the rest of the case, even though he was not a named party until after the case was removed to federal court. Accordingly, the Court grants the Motion.

**I.     THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE-LAW CLAIMS.**

The Court concludes that the Remaining Plaintiffs' federal claims in <u>Burkee, et al. v. San</u> <u>Juan County Detention Center, et al.</u>, No. CIV 15-0439, have been dismissed. Accordingly, the Court declines to exercise its supplemental jurisdiction over the Remaining Plaintiffs' remaining state-law claims. The Court therefore grants the Motion.

The Court will not exercise supplemental jurisdiction over the remaining state-law claims. The supplemental jurisdiction statute enumerates four factors that the Court should consider in determining whether to exercise supplemental jurisdiction:

(1)     the claim raises a novel or complex issue of State law,

(2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

_____

with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court concludes that <u>Muller v. Culbertson</u> has persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

       (4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Tenth Circuit has held that district courts should presumptively decline jurisdiction over state claims when federal claims no longer remain in a case: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Koch v. City of Del City, 660 F.3d at 1248. The Tenth Circuit has recognized that a district court does not "abuse [its] discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it has dismissed all claims over which it has original jurisdiction." Muller v. Culbertson, 408 F. App'x at 197 (internal quotation marks omitted).

Here, all of the federal claims have been dismissed pursuant to the Stipulated Dismissals. See Stipulated Dismissals, supra at 4-6. Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. See Koch v. City of Del City, 660 F.3d at 1248 ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

The Court understands that the Plaintiffs have repeatedly discussed the possibility of amending their Complaint, which theoretically, could introduce new federal claims. In fact, "the Court heard arguments . . . regarding whether an amendment would be allowed in light of the fact that the deadline for amendments had passed," though the Court chose not to rule on the issue until a motion was before it. Response 1 at 3-4. The County Defendants note, however, that "we are now six months past the . . . hearing, and the Plaintiffs have not filed a motion to amend the Complaint." Response 1 at 4. To date, the Plaintiffs have not filed such a motion. The Court cannot consider a motion that is not before it.

The Court also understands that San Juan Regional alleges that "[t]he parties have not

reached any agreement about a motion to amend Plaintiffs' Second Amended Complaint." Response 2 at 1. Specifically, they have not agreed on language that would make permanent the dismissal with prejudice of the federal claims in Berkey. See Response 2 at 3. The Court understands that the Order Dismissing All Federal Claims Against Defendant San Juan Regional Center with Prejudice in 1:15-CV-00439 JB/LF, filed November 17, 2015 (Doc. 97), is an interlocutory order. The Court has no plans, however, to alter this order. Further, at the hearing, the Court asked the Plaintiffs if they had "any intention of bringing federal claims if this case were remanded . . . against the San Juan Regional Medical Center." Tr. at 15:22-24 (Court). The Plaintiffs responded: "No, Your Honor." Tr. at 15:25 (Hatfield). The Plaintiffs added: "[W]hen we withdrew our objection to the dismissal with prejudice that the Court entered last year, I assumed that to be final, and that's the positon we've taken with Ms. Kelly." Tr. at 15:1-5 (Hatfield). Further, the Court also asked the Plaintiffs: "[A]s far as [the County Defendants], can you represent that you're not going to try to bring [them] back in with any sort of state or federal claims?" Tr. at 8:18-21 (Court). The Plaintiffs responded: "[W]e do not intend to do that." Tr. at 8:22 (Hatfield). The Court asked the County Defendants: "I think you're pretty protected, don't you?" Tr. at 8:5-6 (Court). The County Defendants indicated that they were satisfied. See Tr. at 8:7-8 (Childress). Given these counsel's representations, the Court concludes that there is no concern about the Plaintiffs re-alleging federal claims in state court. The Court has to take as true counsel's representations on a host of issues. The Plaintiffs' counsel has given the Court no reason not to trust them. The Court is confident that the federal claims are now gone from this case, whether the case remains in federal court or is remanded to state court.

It is true that the Court and the parties have put a lot of work into this case. There is, however, a lot of work left to be done. There is no guarantee that the Court can, even with its

experience in the case, do the work better or faster than the state court. All that remains are state law claims. The state court, when possible, should decide these claims. See <u>Ball v. Renner</u>, 54 F.3d 664, 669 (10th Cir. 1995)("Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."). The Plaintiffs' counsel has assured the Court that he will not attempt to re-allege federal claims in state court. The Court is confident that it and the parties can rely on these representations. The Defendants are as protected as they can be from federal claims. The state court is the more appropriate forum to conduct the rest of this case.

## II.    THE COURT WILL REMAND MATAMOROS' CLAIMS WITH THE REST OF THE CASE.

Finally, the Court concludes that it will remand Matamoros' claims with the rest of the case. The Plaintiffs note that Matamoros was not named as a plaintiff until after the case was removed to federal court. See Motion at 4-5. Accordingly, the Plaintiffs ask that, if the Court cannot remand Matamoros' claims to state court, the Court dismiss his claims without prejudice so that he may re-file them in state court. See Motion at 5. The Court did not locate a Tenth Circuit case on the issue of remanding a plaintiff to state court who became a party to the lawsuit after the case was removed to federal court. The Court concludes, however, that it has the power to remand Matamoros' claims with the rest of the case.

### A.    PUTTING ASIDE TEMPORARILY THE SUPREME COURT'S PRECEDENTS, THE TEXT OF § 1447 SUGGESTS THAT IT IS THE APPLICABLE REMAND STATUTE.

As an initial matter, from a plain reading of the relevant statutes, the applicable statute for remand in this case appears to be 28 U.S.C. § 1447 and not § 1367(c). Textually, § 1447 governs remand, whereas § 1367(c) governs supplemental jurisdiction. Title 28 of the United States Code governs the "Judiciary and Judicial Procedure." Act June 25, 1948, c. 646, § 1, 62

Stat. 869.  Title 28 has six parts: (I) Organization of the Courts, (II) Department of Justice, (III) Court Officers and Employees, (IV) Jurisdiction and Venue, (V) Procedure, and (VI) Particular Proceedings.

Part IV, "Jurisdiction and Venue," has eleven chapters, although Congress omitted one and repealed another:  Ch. 81 Supreme Court, Ch. 83 Courts of Appeals, Ch. 85 District Courts; Jurisdiction, Ch. 87 District Courts; Venue, Ch. 89 District Courts; Removal of Cases from State Courts, [Ch. 90 District Courts and Bankruptcy Courts] [Omitted], Ch. 91, United States Court of Federal Claims, [Ch. 93, Repealed], Ch. 95 Court of International Trade, Ch. 97, Jurisdictional Immunities of Foreign States, [and] Ch. 99 General Provisions.  Chapter 85, "District Courts; Jurisdiction," defines the district court's jurisdiction in §§ 1330-1369.  As a general rule, the district courts are obligated to exercise the jurisdiction Congress gives them.  See, e.g., Lexmark Intern., Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1386 (2014)("[A] federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging."); Cohens v. State of Virginia, 19 U.S. 264, 404 (1821)("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution.").

In § 1367, Congress expressly gives the district courts supplemental jurisdiction:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In § 1367(b), Congress takes away some supplemental jurisdiction in diversity cases:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b).  In § 1367(c), Congress states the circumstances in which a district court may decline supplemental jurisdiction over a claim:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
> > (1) the claim raises a novel or complex issue of State law,
> >
> > (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> >
> > (3) the district court has dismissed all claims over which it has original jurisdiction, or
> >
> > (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4).  Thus, § 1367(c), beginning in Part 4, Ch. 85, deals with the Court's jurisdiction -- when it must hear cases and when, in a limited number of cases, it can decline to hear claims.  It never mentions remand.  Section 1367(c) repeatedly speaks of "claims" and not "cases":

> The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim raises a novel or complex issue of State law, the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, the district court has dismissed all claims over which it has original jurisdiction . . . .

28 U.S.C. § 1367(c)(emphasis added).

In contrast, § 1447 -- part of Chapter 89 -- expressly discusses remand.  Chapter 89 is also in Part 4 of Title 28, but Chapter 89 is titled "District Courts; Removal of Cases from State

- 21 -

Courts," and includes §§ 1441-1445. Section 1446 gives the "Procedure for Removal of Civil Actions," and § 1447 notes the "Procedure after Removal Generally." Section 1447(c) states, in relevant part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the <u>case</u> shall be remanded." 28 U.S.C. § 1447(c)(emphasis added).

Section 1447 speaks of remanding "cases." 28 U.S.C. § 1447(c)("a motion to remand the <u>case</u> . . . an order remanding the <u>case</u> . . . .")(emphasis added):

> An order remanding the <u>case</u> to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a <u>case</u> to the State court from which it was removed pursuant to section 1442 or 1443 . . . shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d)(emphasis added).

Thus, § 1367 appears to govern jurisdiction, whereas § 1447 appears to govern remand. When, under § 1367(c), the Court decides it should not exercise jurisdiction, then, under § 1447(c), the Court must remand the entire case, not just the claims that were there when the case was removed. Nothing in the text of § 1367(c) requires that the district court remand only claims; § 1367(c) facially does not have anything to do with remand.

The Supreme Court has emphasized that "it is a 'fundamental canon of statutory construction' that, 'unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.'" <u>Sandifer v. U.S. Steel Corp.</u>, 134 S. Ct. 870, 876 (2014)(Scalia, J.). <u>See Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc.</u>, 909 F. Supp. 2d 1225, 1240 (D.N.M. 2012)(Browning, J.)(explaining that, if statutory language has plain and unambiguous meaning, the inquiry ends). The word "case" refers to the entire case, whereas the word "claim" refers to individual claims within the case. Section 1367 does not tell the district court what to do with the claims over which it declines jurisdiction; it simply gives the Court the factors that it may use to decline jurisdiction. In other words, § 1447(c) appears to make it

obligatory to remand "cases" when the Court chooses not to exercise supplemental jurisdiction and "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

It may be argued that § 1447(c) allows a remand only where there is "any defect other than lack of subject matter jurisdiction" or when the district court lacks "subject matter jurisdiction," and that, when a district court declines to exercise supplemental jurisdiction over a claim, it does not lack subject matter jurisdiction, nor is there a "defect." 28 U.S.C. § 1447(c). It seems, however, that when a district court declines to exercise supplemental jurisdiction after it dismisses all claims over which it had original jurisdiction, see 28 U.S.C. § 1367(c)(3), it "lacks subject matter jurisdiction." In other words, § 1367(c)(3) determines whether the Court has jurisdiction; once the district court declines jurisdiction, it is just as much without subject matter jurisdiction as it would be if it dismissed the claims for lack of diversity or federal question jurisdiction.

## B. SUPREME COURT PRECEDENT CASTS DOUBT ON THE COURT'S TEXTUAL CONSTRUCTION.

Although the above textual interpretation of § 1367(c) and § 1447 seems straightforward and correct, history and Supreme Court precedent compel another interpretation. The modern doctrine of supplemental jurisdiction originated in the common law doctrine of pendant jurisdiction, which refers to supplemental jurisdiction in federal question cases. See Hart and Wechsler at 861. Before the modern supplemental jurisdiction statute, § 1367(c), existed, the Supreme Court confronted the question "whether a federal district court has discretion under the doctrine of pendant jurisdiction to remand a properly removed case to state court when all federal-law claims in the action have been eliminated and only pendant state-law claims remain." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 345 (1988). The Supreme Court, in an

opinion that Justice Marshall wrote, and Justices Brennan, Blackmun, Stevens, and O'Connor joined, held that "a district court has discretion to remand to state court a removed case involving pendant claims upon a proper determination that retaining jurisdiction would be inappropriate." 484 U.S. at 357.

Justice White dissented, in an opinion that Chief Justice Rehnquist and Justice Scalia joined, arguing that "[t]he Court today discovers an inherent power in the federal judiciary to remand properly removed cases to state court . . . [b]ecause I believe that cases may be remanded only for reasons authorized by statute . . . I dissent." 484 U.S. at 358 (White, J., dissenting). For Justice White, the Court's holding was "inconsistent with Congress' understanding of the federal courts' remand authority." 484 U.S. at 359.

Two years later, "Section 1367 was implemented . . . and codifie[d] the case-law doctrines of 'pendant' and 'ancillary' jurisdiction." Administaff, Inc. v. Kaster, 799 F. Supp. 685, 688 (W.D.T.X. 1992)(Sparks, J.).

> While Section 1367 does not specifically address remand, it does state that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if (1) the claim raises a novel or complex issue of state law [or] (2) the [state law] claim substantially predominates over the claim or claims over which the district court has original jurisdiction . . . ."

Administaff, Inc. v. Kaster, 799 F. Supp. at 688 (quoting 28 U.S.C. § 1367(c)(1)-(2)). "In Cohill, the Supreme Court determined that a district court could remand 'a removed case involving pendant claims upon a proper determination that retaining jurisdiction over the case would be inappropriate,' despite the lack of specific statutory authority to do so." Administaff, Inc. v. Kaster, 799 F. Supp. at 688-89 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. at 357). At least one district court read into § 1367(c) the authority that the Supreme Court granted

in <u>Carnegie-Mellon Univ. v. Cohill</u> to remand a case when the court declines to exercise supplemental jurisdiction:

> Read in light of the Supreme Court's expansion of its foremost case on pendant jurisdiction, <u>United Mine Workers of America v. Gibbs</u>, to allow remand of pendant claims as well as dismissal when a 'a case properly belongs in state court,' Section 1367(c) authorizes a district court to remand a case whenever it may decline to exercise supplemental jurisdiction over a state claim under Section 1367(c).

<u>Administaff, Inc. v. Kaster</u>, 799 F. Supp. at 688.   <u>See</u> <u>Williams v. Huron Valley Sch. Dist.</u>, 858 F. Supp. 97, 100 (E.D. Mich. 1994)(Cook, C.J.)(explaining that "[t]he federal courts already possess the power to remand a case involving supplemental claims under 28 U.S.C. §§ 1367(c)(1) and (2) as well as <u>Carnegie-Mellon University</u>").

In 2009, the Supreme Court heard a case in which "[t]he District Court . . . remanded the case to state court as authorized by this Court's decision in <u>Carnegie-Mellon Univ. v. Cohill</u>." <u>Carlsbad Tech., Inc. v. HIF Bio Inc.</u>, 556 U.S. 635, 637 (2009)(Thomas, J.).   The Supreme Court, in a unanimous opinion by Justice Thomas, noted that "[t]his Court's precedent makes clear that whether a court has subject-matter jurisdiction over a claim is distinct from whether a court chooses to exercises that jurisdiction."   556 U.S. at 639 (citing <u>Quackenbush v. Allstate Ins. Co</u>, 517 U.S. 706, 712 (1996)).   "With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise."   556 U.S. at 639.   "As a result, 'the [district] court's exercise of its discretion under § 1367(c) is not a jurisdictional matter.'"[5]   556 U.S. at 640 (quoting J. Moore et

---

[5]The issue before the Supreme Court in <u>Carlsbad Tech., Inc. v. HIF Bio Inc.</u> was whether a district court's order remanding a case after declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) was reviewable on appeal.   <u>See</u>  <u>Carlsbad Tech., Inc. v. HIF Bio Inc.</u>, 556 U.S. at 636.   The conclusion that "'the [district] court's exercise of its discretion under § 1367(c) is not a jurisdictional matter,'" formed the basis for the case's ultimate holding that "[t]he remand order, therefore, is not based on a 'lack of subject matter jurisdiction' for purposes

al., Moore's Federal Practice § 106.05[5], at 106-31 (3d ed. 2009)).  The Supreme Court concluded that, "[w]hen a district court remands claims to a state court after declining to exercise supplemental jurisdiction, the remand order is not based on a lack of subject-matter jurisdiction for purposes of §§ 1447(c) and (d)."  Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. at 641.

C. **THE COURT'S POWER TO REMAND COMES FROM THE SUPREME COURT'S DECISION IN CARNEGIE-MELLON UNIVERSITY V. COHILL, AND NOT FROM § 1367(C) AND § 1447.**

Thus, while the Supreme Court was not deciding the issue in this Court's case when it decided Carlsbad Technology, Inc. v. HIF Bio, Inc., the Supreme Court indicated that a remand under § 1367(c) is not, despite the text and structure of the relevant statutes, a remand under § 1447, but rather, a remand under § 1367(c) and Carnegie-Mellon University v. Cohill. Although 1367(c)'s text speaks of "claims" and not "cases," the text of 1367(c) is not where the remand power originates; rather, the remand power comes from Carnegie-Mellon University v. Cohill.  That case -- even though it predates § 1367(c) -- held that "[t]his Court's crafting of the pendant jurisdiction doctrine in Gibbs strongly supports the conclusion that when a district court may relinquish jurisdiction over a removed case involving pendant claims, the court has discretion to remand the case to state court."  Carnegie-Mellon Univ. Cohill, 484 U.S. at 351 (emphasis added).  It also notes that "a remand may best promote the values of economy, convenience, fairness, and comity."  484 U.S. at 353.  Specifically, "[a]ny time a district court dismisses, rather than remands, a removed case involving pendant claims, the parties will have to refile their papers in state court, at some expense of time and money."  484 U.S. at 353. "Moreover, the state court will have to reprocess the case, and this procedure will involve similar costs.  Dismissal of the claim therefore will increase both the expense and the time involved in

_____
of the bar to appellate review created by §§ 1447(c) and (d)."  Carlsbad Tech., Inc. v. HIF Bio Inc., 556 U.S. at 640-41.

enforcing state law." 484 U.S. at 353. "This consequence, even taken alone, provides good reason to grant federal courts wide discretion to remand <u>cases</u> involving pendant claims when the exercise of pendant jurisdiction over such cases would be inappropriate." 484 U.S. at 353 (emphasis added).

Indeed, the Court notes that remanding only some claims but not others would create logistical problems without any benefit for the Court or the parties. Dismissing Matamoros' claims without prejudice would force him to re-file them in state court, pay a filing fee, and move to consolidate his claims with the rest of the case, or at least move to intervene in the state court. Such a rule would also burden the Court. Every time it declined to exercise jurisdiction on some, but not all, individual claims under § 1367(c), it would have to go through the case's history and decide which claims to dismiss and which to remand. It would have to dismiss any claims added after remand. It would have to remand claims against defendants added after removal. The state court would receive these case fragments through remand and would have to put the case back together. It is hard to determine what policy -- federalism, efficiency or comity -- such a rule would advance. Further, nothing in § 1367(c) or <u>Carnegie-Mellon University v. Cohill</u> requires or suggests such an approach. In fact, <u>Carnegie-Mellon University v. Cohill</u> suggests the opposite approach, giving the district courts "wide discretion to remand <u>cases</u> involving pendant claims," 484 U.S. at 353 (emphasis added).

Here, Matamoros has individual "claims," but his claims are part of the whole "case." Given the Court's "wide discretion to remand cases involving pendant claims," the Court concludes that it can, and should, remand Matamoros' claims with the rest of the case. <u>Carnegie-Mellon Univ. v. Cohill,</u> 484 U.S. at 353. If the Court were to dismiss Matamoros' claims without prejudice, he would have to "refile . . . papers in state court, at some expense of time and

money." <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. at 353. "Moreover, the state court [would] have to reprocess the case, and this procedure [would] involve similar costs. Dismissal of the claim therefore [would] increase both the expense and the time involved in enforcing state law." <u>Carnegie-Mellon Univ. v. Cohill,</u> 484 U.S. at 353.

**IT IS ORDERED** that: (i) Plaintiffs Jesse Berkey, Aaron Eaton, Joseph Gutierrez, Aurelio Marquez, Rudy Martinez, Paul Matamoros, Clifford Rogers, Harry Williams and Calvin Finch's Motion for Remand to State Court, filed August 15, 2016 (Doc. 329), is granted; (ii) the case, No. CIV 15-0439, including Plaintiff Paul Matamoros' claims, is remanded to the Eleventh Judicial District Court, San Juan County, State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory M. Tucker
Mitchel S. Burns
Jennifer D. Yoder
Christian A. Hatfield
Tucker Burns Yoder & Hatfield Law Firm
Farmington, New Mexico

--and--

John Holland
Anna Holland Edwards
Erica Grossman
Holland, Holland Edwards & Grossman, P.C.
Denver, Colorado

    *Attorneys for the Plaintiffs*

Ronald Childress
Elaine Dailey
Urvashi Parkhani
Childress Law Firm
Albuquerque, New Mexico

> *Attorneys for Defendants San Juan County Detention Center, San Juan County, and Thomas C. Havel*

Robert J. Curtis
Ellen M. Kelly
Robert Curtis Law Office P.A.
Albuquerque, New Mexico

> *Attorneys for Defendants San Juan Regional Medical Center, Eric Ketcham, and Cindy Ketcham*

Brett C. Eaton
W. Ann Maggiore
Butt Thornton & Baehr, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendant Katie Moore*

Alfred A. Park
Kevin D. Fowler
Lawrence M. Marcus
Park & Associates L.L.C.
Albuquerque, New Mexico

> *Attorneys for Defendant Correctional Healthcare Companies Inc.*

W. Mark Mowery
Jessica R. Terrazas
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Santa Fe, New Mexico

> *Attorneys for Defendant Presbyterian Medical Services*